IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION



JIMMY AMMONS,

    Plaintiff,

v.

EARTHGRAINS BAKING COMPANIES, INC.,

    Defendant.

CIVIL ACTION NO.
03-AR-1478-M

## MEMORANDUM OPINION

Before the court are the motions of defendant, Earthgrains Baking Companies ("Earthgrains"), for summary judgment and to strike portions of the affidavit of plaintiff, Jimmy Ammons ("Ammons"), filed in opposition to Earthgrains' motion for summary judgment. Ammons, a black male, makes two claims against Earthgrains, his employer invoking Title VII of the Civil Rights Act of 1964 as amended, and 42 U.S.C. § 1981: (1) discriminatory failure to promote, and (2) retaliation.[1]

### Summary Judgment Facts

Ammons began working at Earthgrains' bakery plant in Ft. Payne, Alabama in May 1980. The non-supervisory jobs at Earthgrains in ascending order of the level of responsibility and

---

[1] In his response to the motion for summary judgment, Ammons abandoned all other claims possibly asserted in his complaint.

1

pay are: helper, machine operator, mixer, and the lead. Ammons is a member of Local #611, Bakery, Confectionary, Tobacco Workers & Grain Millers International Union ("Union"). The Collective Bargaining Agreement ("CBA") between the Union and Earthgrains establishes a "bump and bid" procedure for applying for and obtaining jobs in all the above-listed job classifications except the lead. Under the "bump and bid" procedure, when a job becomes available, the worker with the most seniority who bids on the job is selected. "Bumping" occurs when a worker with more seniority bumps someone with less seniority from his or her job. Ammons began working at Earthgrains as a helper, and has remained in the helper classification for most of his time at Earthgrains. He has never held a lead position. Seniority is not the primary or deciding factor in evaluating candidates for a lead position. Some of the duties of a lead job include: managing the area of production or distribution to which the lead person is assigned, overseeing the mechanical and labor tasks, and supervising employees on the production line. In selecting persons for the lead job, Earthgrains considers: leadership qualities, dependability, and interpersonal skills.

In February 2002, a lead job became available on Earthgrains' hearth line. Ammons expressed an interest in the job to Danny Wagner ("Wagner"), the Director of Operations at Earthgrains. However, Wagner and Cecile Gray ("Gray"), the Human Resources

Manager, selected Julia Daniels ("Daniels") for the hearth line lead job. She is white.

After Ammons filed an EEOC complaint complaining about Earthgrains' failure to promote him to the hearth line lead, Donald Hall ("Hall"), another black male, was given a lead job on the rhondo line. Hall had worked at Earthgrains only a short time before being offered the lead job.

## Analysis

### Motion to Strike

Earthgrains moved to strike paragraphs 4, 5, 8-11, 13, 14, and 16-24 of Ammons' affidavit submitted in response to the motion for summary judgment. Ammons did not respond to the motion to strike. Having reviewed the motion, the court concludes:

> (1) The following paragraphs will be struck from Ammons' affidavit, because they contain sham testimony: 4, to the extent that it says Ammons asked Myra Dalton for training; 17, in its entirety; 18, to the extent it says Wagner promised Ammons the hearth line lead job; and 20, in its entirety. *See Van T. Junkins and Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

> (2) The following paragraphs will be struck from Ammons' affidavit, because they contain conclusory allegations without specific supporting facts: 5, but only the second sentence; 8, in its entirety; 13, to the extent it says that Ammons was more dependable than Daniels; 14, to the extent it says that Ammons had better interpersonal skills than Daniels; 16, to the extent it says that Ammons had better leadership skills than Daniels; 21, but only the first sentence; 22, in its entirety; and 23, in its entirety. *See Evans v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

The motion will be denied in all other respects.

*Failure to Promote Claim*

In order to establish a *prima facie* case of discriminatory failure to promote, Ammons must demonstrate: (1) he is a member of a protected minority group, (2) he was qualified for and applied for the promotion, (3) he was rejected in spite of his qualifications, and (4) the person who received the promotion is not a member of a protected minority group and had lesser or equal qualifications. *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000); *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998). If plaintiff succeeds in establishing a *prima facie* case, the employer must then produce a legitimate, nondiscriminatory reason for its action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Tex. Dep't of Community Aff. v. Burdine*, 450 U.S. 248, 254 (1981). If the employer meets this burden, the employee must offer proof that the articulated reason is pretextual. *See McDonnell Douglas*, 411 U.S. at 804; *Burdine*, 450 U.S. at 256. "In a failure to promote case, a plaintiff cannot prove pretext by simply showing that [he] was better qualified than the individual who received the position that [he] wanted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by [race]." *Lee*, 226 F.3d at 1253. The Eleventh Circuit has explained that "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the

4

wisdom of the employer's reasons, at least not where...the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997). Evidence that the employer hired a less qualified individual than the plaintiff may be probative of pretext, but in order to prove pretext through disparity in qualification, the disparities "must be of such weight and significance that no reasonable person, in exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Lee*, 226 F.3d at 1254.

Ammons says that the decision to promote Daniels instead of him to the hearth line lead job was discriminatory. Assuming *arguendo* that Ammons can establish a *prima facie* case, Earthgrains has set forth a legitimate reason for choosing Daniels over Ammons: Daniels was better qualified. The decision makers, Gray and Wagner, believed that Daniels was better suited for the lead job based on: (1) her initiative to seek jobs with added responsibility; (2) her filling in as a lead when other persons with lead jobs were absent; and (3) her exhibition of leadership skills, dependability, and good interpersonal skills. Def. Reply in Support of Mot. Summ. J. at 5; Gray Aff. ¶ 7. Gray and Wagner did not select Ammons for the job because of his "failure to take advantage of the job opportunities, which would have provided him with the skills necessary for a Lead job, and as a result of his

5

failure to exhibit interpersonal and leadership skills that are required for the Lead job...." Gray Aff. ¶ 7.

Ammons makes five arguments that he believes demonstrate pretext: (1) Daniels had less experience in a bakery in general and on the hearth line in particular than Ammons did; (2) Daniels did not work as a fill-in lead as Earthgrains alleged; (3) fill-in lead experience is not a prerequisite for promotion as Earthgrains alleged; (4) he also had lead training like Daniels had; and (5) he had leadership skills, was dependable, and had good interpersonal skills. Ammons Aff. ¶¶ 9-16. With regard to the first argument, Ammons is correct that he had more experience at Earthgrains than Daniels did. He started at Earthgrains in May 1980, while Daniels did not start at Earthgrains until June 2000. However, he does not deny the fact that seniority is not of primary significance in selecting individuals for lead jobs. Gray Aff. ¶ 6. As detailed above, there are many factors that go into selecting a person for a lead job. While seniority and experience may be a factor, that alone does qualify a person for lead job. Second, Ammons says that Daniels did not work as a fill-in lead. Ammons based this assertion on the fact that the Earthgrains employment records submitted to the court do not show that she worked as a fill-in lead, and that Earthgrains did not specify when and how long she worked as a fill-in lead. Ammons Aff. ¶ 11. However, Ammons apparently overlooked that Gray swore in her affidavit that

6

approximately two to three days per week Daniels filled in for Stanley Dutton as the lead in cake sanitation. Gray Aff. ¶ 7. Ammons provides no evidence to contradict this statement. Third, Earthgrains never said that fill-in lead experience was a prerequisite for obtaining a lead job. Earthgrains said with some logic that it viewed Daniel's experience as a lead fill-in as a plus. See id. ¶ 7. Fourth, Ammons says that he had lead training in 1996. Earthgrains criticized Ammons for not taking advantage of job opportunities, not for never having gotten any training. For instance, Earthgrains points to the following exchange in Ammons' deposition:

> A: No, I got a bump out of that job because they changed the job.
> Q: They changed the job?
> A: They added to my responsibilities, and I got a bump through the union to get a different job.
> Q: You didn't want the added responsibility of the helper/straightener job, so you bumped to the croissant wrap helper?
> A: Yes, ma'am.

Ammons Dep. at 70. Fifth, Ammons basically argues he was a better pick for the lead job. Ammons has not presented evidence that Daniels was not qualified for the lead job.[2] The only area in which there is a disparity between Ammons and Daniels is in experience at Earthgrains, but it is undisputed that seniority is not an important consideration in selecting a person for a lead

---

[2] Ammons made some conclusory statements in his affidavit that he was better qualified for he job, but, as discussed above, those will be stricken.

7

job. As previously noted, Ammons must create a fact issue showing that the disparities between Daniels and he were "of such weight and significance that no reasonable person, in exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Lee*, 226 F.3d at 1254. Ammons' statements that he would have been good at the lead job are not sufficient to meet this burden.

### Retaliation Claim

To establish a *prima facie* case of retaliation an employee must demonstrate: (1) that he engaged in a statutorily protected activity, (2) that he suffered an adverse employment action, and (3) that there is a causal connection between the two. *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600-01 (11th Cir. 1986). With regard to the second element, the Eleventh Circuit has explained that not all actions adversely effecting an employee constitute "adverse employment actions." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). The conduct must impact the employee's job in a "real and demonstrable way." *Id.* at 1239. While proof of economic consequences is not required in all cases, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Id.* The employee must show that the employment action resulted in a "serious and material" change in the terms, conditions, or privileges of employment. *Id.*

Ammons argues that the promotion of Hall, instead of himself, to the lead on the rhondo line was in retaliation for Ammons' most recent EEOC complaint. *See* Ammons Aff. ¶ 24. Earthgrains' only argument on the retaliation claim as it relates to Hall is that Ammons did not want Hall's job, and thus did not suffer an adverse employment action. *See* Def. Brief in Support of Mot. Summ. J at 31-32; Def. Reply Brief in Support of Mot. Summ. J. at 8. Earthgrains relies on Ammons' deposition testimony to support this point. The following exchange took place during Ammons' deposition testimony:

> Q: What was the job that Don Hall took that nobody wanted?...
> A: It was a mixer.
> Q: Mixer?
> A: On the Rhondo line.
> ...
> Q: Okay. Was that a job you could have done, the mixer on the Rhondo line?
> A: I did that job before. Yeah, I could have did it. I've been a mixer before.
> ...
> Q: But you didn't try to bid or bump into that job?
> A: I didn't want the job.

Ammons Dep. at 47-48. Earthgrains cites the last answer to support its allegedly undisputed fact that Ammons did not want Hall's job as lead of the rhondo line. The deposition excerpt does not eliminate all dispute on that issue. Ammons was asked whether he tried to bid or bump into Hall's job as a **mixer** on the rhondo line. Ammons was not talking about the lead job in that portion of his deposition. As previously discussed, lead jobs were not subject to

9

the bump and bid procedure. Earthgrains does not point to any testimony that indicates that Ammons did not want the lead job that was awarded to Hall. The court is satisfied that there is an issue of fact as to whether Ammons wanted the lead job given to Hall. *See e.g.*, Ammons Aff. at 191-92. Further, denial of a promotion is a sufficient adverse employment action to satisfy the second element of a *prima facie* retaliation case. Earthgrains made no other challenges to Ammons' retaliation claim. *See* Def. Brief in Support of Mot. Summ. J at 31-32; Def. Reply Brief in Support of Mot. Summ. J. at 8. The court will deny the motion for summary judgment as it pertains to the retaliation claim.

### Conclusion

By separate order, the court will partially grant Earthgrains' motions to strike, and will grant the motion for summary judgment with respect to the promotion claim and deny it with respect to the retaliation claim.

DONE this ___20th___ day of August, 2004.

William M Acker
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE